**Terance P. Perry, Esq.**
**Del M. Post, Esq.**
DATSOPOULOS, MacDONALD & LIND, P.C.
201 West Main Street, Suite 201
Missoula, Montana 59802
Phone: (406) 728-0810
Fax: (406) 543-0134
e-mail: tperry@dmllaw.com, dpost@dmllaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION**

| | |
|---|---|
| DYLAN DODD,<br><br>                    Plaintiff,<br><br>v.<br><br>CABELA'S, INC., CABELA'S WHOLESALE, INC. and TLD INDUSTRIES, LLC,<br><br>                    Defendants. | Case No. _____<br><br><br>**COMPLAINT AND JURY CLAIM** |

**I.  SUBJECT MATTER JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1332(c)(1)

   insofar as diversity of citizenship exists between Plaintiff and each Defendant and the

   amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

**II.  VENUE AND PERSONAL JURISDICTION**

2. Venue is proper and personal jurisdiction exists in the Missoula Division of the United

   States District Court for the District of Montana pursuant to L.R. (D. MT) 3.2, 28 U.S.C.

   §§ 1391(a)(2), 1391(b)(1) and (c)(2) and the Due Process Clause of the Fourteenth

   Amendment to the United States Constitution since Plaintiff resides in Hayden Lake,

Kootenai County, Idaho, since at all times relevant Defendant, Cabela's, Inc., resided and transacted business within the State of Montana and, specifically, within this judicial district, since at all times relevant Defendant, Cabela's Wholesale, Inc., resided and transacted business within the State of Montana and, specifically, within this judicial district and since at all times relevant Defendant, TLD Industries, LLC, resided and transacted business within the State of Montana and, specifically, within this judicial district.

3. Defendants, and each of them, are found within Montana and each of the Defendants transacts business within Montana, they own, use or possess property or an interest therein within Montana and they contract for services to be rendered and for materials to be furnished within Montana, all within the context of Fed.R.Civ.P. 4(k)(1)(A) and Mont.R.Civ.P. 4(b)(1)(A), 4(b)(a)(C) and 4(b)(1)(E).

4. All of such activities occur within the Missoula Division of the U.S. District Court for the District of Montana.

### III.  FACTS COMMON TO ALL COUNTS

5. Plaintiff, Dylan Dodd, resides in Spirit Lake, Kootenai County, Idaho and is a citizen and resident of that state.

6. Defendant, Cabela's, Inc., is incorporated in the State of Delaware, has its principal place of business located in Sidney, Nebraska and thus is a citizen of the states of Delaware and Nebraska within the context of 28 U.S.C. §§1332(a) and 1332(c)(1).

7. Defendant, Cabela's Wholesale, Inc., is incorporated in the State of Nebraska and has its principal place of business located in Sidney, Nebraska and thus is a citizen of the State of Nebraska within the context of 28 U.S.C. §§1332(a) and 1332(c)(1).

8.  Defendant, TLD Industries, LLC, is a duly existing limited liability company formed under the laws of the State of Utah, has its principal place of business located in Herriman, Utah, all of its members reside in and are citizens of the State of Utah and, thus, it is a citizen of the State of Utah within the context of 28 U.S.C. §§1332(a) and 1332(c)(1).

9.  Complete diversity of citizenship exists between Plaintiff and each of the Defendants.

10. At all times relevant Defendant, Cabela's Wholesale, Inc., did business as "Cabela's".

11. At all times relevant Defendant, Cabela's, Inc., represented to the general public that it owned and operated all Cabela's retail stores throughout the United States including, but not limited to, retail stores in Post Falls, Kootenai County, Idaho, Kalispell, Lake County, Montana and Missoula, Missoula County, Montana.

12. On or about May 22, 2008, Defendant, Cabela's Wholesale, Inc. acquired Cabela's Retail, Inc., the latter of which corporations had, prior to that date, owned and operated the Cabela's retail store located in Post Falls, Idaho and, in the process of such acquisition and merger, Defendant, Cabela's Wholesale, Inc., acquired all assets and assumed all liabilities of Cabela's Retail, Inc.

13. At all times relevant Defendant, Cabela's, Inc., wholly owned, controlled, directed, managed and operated all facets of Defendant, Cabela's Wholesale, Inc.

14. At all times relevant Defendant, Cabela's, Inc., operated Defendant, Cabela's Wholesale, Inc., for its sole and exclusive benefit.

15. At all times relevant Defendant, Cabela's, Inc., had a consolidated balance sheet that carried all assets and liabilities of Defendant, Cabela's Wholesale, Inc.

16. At all times relevant, all economic benefits derived from Defendant's, Cabela's Wholesale, Inc.'s, operations inured to the benefit of Defendant, Cabela's, Inc.

17.   At all times relevant such a unity of interest and ownership existed between Defendants, Cabela's, Inc., and Cabela's Wholesale, Inc., that the separate personalities of the two corporations ceased to exist and they operated as one seamless entity.

18.   To construe Defendants, Cabela's, Inc., and Cabela's Wholesale, Inc., as separate and/or independent corporations would, in the present context, further and advance inequitable results and would promote injustice.

19.   At all times relevant, Defendant, Cabela's Wholesale, Inc., was a wholly owned subsidiary of Defendant, Cabela's, Inc. and was functionally indistinguishable from the latter.

20.   At all times relevant, Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc., owned and operated an outdoor sporting goods chain of retail stores throughout many states in the United States, including Idaho and Montana and, in fact, operate stores in Missoula, Missoula County, Montana, in Kalispell, Flathead County, Montana, and in Post Falls, Kootenai County, Idaho.

21.   At all times relevant, Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc., were the agents of each other, and in performing the acts alleged herein each such Defendant was acting within the course and scope of such agency and was subject to and under the supervision and control of its co-Defendant and/or such Defendants were joint venturers in the ownership and operation of such retail stores and, in performing the acts alleged herein, each such Defendant was acting in furtherance of the joint venture and on behalf of its co-Defendant.

22.   At all times relevant, Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc., acted in concert with each other, in furtherance of a common plan or design and each is

responsible for the tortious conduct of the other.

23. At all times relevant hereto, Defendants had substantial contacts with both Idaho and Montana and derived substantial revenue from their sale of goods and services in both states.

24. At all times relevant, Defendant, TLD Industries, LLC ("TLD"), contracted with Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc. (collectively, "Cabela's"), to sell various products which Defendant, TLD, knew or had reason to know would be sold in Defendant's, Cabela's, retail stores in both Idaho and Montana and, in fact, at all times relevant such products were sold in such stores.

25. At all times relevant, Defendant, TLD, advertised, sold, distributed and marketed a line of "exploding target" products directly to the general public and to Defendants, Cabela's, and said products were at all times relevant sold to the general public at Defendants', Cabela's, retail stores located in Post Falls, Idaho and in Kalispell, Montana.

26. The line of "exploding target" products included a product identified as "Rimfire Exploding Targets" ("RET").

27. At all times relevant, Defendant, TLD, either designed, produced, made, fabricated, constructed and packaged the RET product itself or it provided the plans and specifications for the fabrication, construction, production, manufacture, preparation and packaging of the RET product to a third party or parties who, in turn, produced, prepared, made, fabricated, constructed and packaged the RET product consistent with said Defendant's plans and specifications.

28. At all times relevant, the plans and specifications for the RET product were a substantial cause of defects in the product.

29.   At all times relevant, Defendant, TLD, was a manufacturer of the RET product within the context of I.C. §6-1402(2).

30.   At all times relevant, Defendants, and each of them, were product sellers of the RET product within the context of I.C. §6-1402(1).

31.   At all times relevant, the RET product was, in fact, a "product" within the context of I.C. §6-1402(3).

32.   At all times relevant, and as a matter of law, Defendants, and each of them, had knowledge of the risks associated with the use, and foreseeable misuses, of the RET product.

33.   At all times relevant, Defendant, TLD, advertised the RET product on the internet in a manner wholly distinct from internet advertising of the RET product undertaken by Defendants, Cabela's.

34.   At all times relevant, Defendants, Cabela's, affirmatively represented to the general public that:

> [a]t Cabela's, you get detailed, accurate information that's hard to find anywhere else.  Our in house Product Research Team opens the box, verifies the contents, checks the owner's manual, and records dimensions, features and specifications.  Living the Outdoor Lifestyle is in our nature.  We use what we sell and we are always adding recommendations along with additional "tips and tricks" to using our products.

35.   At all times relevant, Defendants, and each of them, were in the business of marketing, distributing and selling the RET product into the stream of commerce.

36.   Defendants, and each of them, intended such product to reach users or consumers of it without substantial change in the condition in which it was sold and the RET product reached Plaintiff, a consumer, without substantial change in its condition from the time that it was first sold by Defendant, TLD, to Defendants, Cabela's.

37. At all times relevant, Defendants, Cabela's, inspected, tested, advertised, marketed and sold the RET product to the general public both through their website and through their retail stores located in Kalispell, Montana and in Post Falls, Idaho.

38. On December 22, 2012, Plaintiff's, Dylan Dodd's, brother's eighteen (18) year old girlfriend, Amanda Lewis ("Amanda"), visited the Cabela's store located in Post Falls, Idaho accompanied by Plaintiff's eighteen (18) year old sister, Karalynn Dodd ("Karalynn"), in order to purchase a Christmas present for Amanda's boyfriend, Justin Dodd.

39. After Amanda had purchased a .22 rifle for Justin Dodd, and had actually gone through the "background check" process that demonstrated that she was not twenty-one (21) years old, Amanda and Karalynn did not leave the store but, rather, went to find "clay pigeons" so that Amanda could also purchase that product as another Christmas present for Justin Dodd.

40. A Cabela's employee by the name of "Stewart" ("Stewart") then approached the two girls and asked them what they were looking for at which point Amanda told him that they were looking for a clay pigeon thrower.

41. At that time, Stewart told them about the "exploding targets" and how "cool" they were and then he walked the two teenagers over to the RET product display area and showed them the product.

42. Stewart proceeded to convince Amanda to purchase the RET product, rather than a clay pigeon thrower.

43. Karalynn was present for the entire discussion between Amanda and Stewart regarding the "exploding targets".

44. Karalynn was present with Amanda during the entire time Amanda was in the store, including the checkout process, and the two teens were never separated during the entire visit to Defendants', Cabela's, retail store in Post Falls, Idaho.

45. Stewart actually walked the teen girls to the cash register and checked Amanda out himself.

46. At no time did Stewart ever ask either of the girls how old they were nor did he ever ask either of them to show him their driver's license or provide either of them with any warning regarding the use of the RET product.

47. At no time on December 22, 2012 did any employee of Defendants, Cabela's, provide either of the girls with any warning regarding the use of the RET product.

48. At no time on December 22, 2012 did any Cabela's employee ever advise Amanda that there was a minimum age of twenty-one (21) to purchase the RET product.

49. The "exploding targets" that Amanda purchased on December 22, 2012 were the "10 pk Rimfire Exploding Targets" sold by Defendant, TLD, to Defendants, Cabela's, for retail sale.  (see Exhibit "A", 12/22/12 receipt for purchase).

50. On December 22, 2012 Amanda Lewis was only eighteen (18) years old, a fact of which Defendants, Cabela's, were aware prior to her purchase of the RET product since she had previously completed a background check in order to purchase the .22 rifle.

51. On December 25, 2012, Amanda gave the "Rimfire Exploding Targets" that she had purchased from Defendants, Cabela's, on December 22, 2012 to Justin Dodd as a Christmas present.

52. During December 2012, the RET product consisted of four principal components: a plastic bag containing potassium perchlorate, a plastic bag containing a mixture of

aluminum and sulfur, a plastic bag in which to mix the two chemicals together and plastic capsules called "snap caps" into which to place the chemical mixture.

53. None of the plastic bags included with the RET product had any warning or instructions printed on them.

54. Once the two chemicals were mixed together and scooped into the "snap caps" using the plastic spoon that was also supplied with the RET product, the capsules were to be placed on targets to be shot at.

55. On December 28, 2012, Justin Dodd, Dylan Dodd and some of their friends travelled to a firing range in Hayden, Idaho in order to shoot and to try out the RET product that they brought with them.

56. The RET product was the only exploding target product that the group of kids brought with them on December 28, 2012.

57. After Plaintiff had looked at the RET box, his friend, Alex, mixed the two chemicals together in the mixing bag, scooped it into the snap caps and the kids proceeded to use the product for a period of time after which they decided to light a small fire in order to get warm before going home.

58. Despite the fact that the kids had filled up all of the "snap caps" provided in the RET box, there was still an excess of the chemical mixture left in the mixing bag.

59. Plaintiff had seen no warning on the box that the product would explode if exposed to flame or high heat and, in fact, given the prominent text on both the front and back of the box he believed that the only way it could be detonated would be if it were shot at.

60. The group had difficulty lighting the fire so Plaintiff, Dylan Dodd, decided to pour a tiny bit of the excess RET mixture that was in the mixing bag into the smoldering fire in order

to help start it, believing that it might help to get it going.

61.  Plaintiff, Dylan Dodd, had just begun to drizzle some of the RET mixture into the smoldering fire when the mixing bag in his hand detonated; Plaintiff's right hand and part of his forearm were gone in an instant.

62.  The blast was so violent that it drove fragments of bones from Plaintiff's hand and arm into the leg of his friend, Alex, who had been standing nearby.

63.  Plaintiff, Dylan Dodd, lost his hearing for nearly a minute.

64.  Plaintiff's brother and friends rushed him back to Coeur d'Alene, Idaho where he underwent emergency surgery to save as much of his arm as possible, however, he lost his entire right hand and part of his forearm.

65.  In December of 2012, Defendants, Cabela's, advertised, marketed and sold "Rimfire Exploding Targets" as a fun and safe product, advising consumers that they would "get a bigger bang" if they shot at exploding targets.

66.  At all times relevant, Defendants, Cabela's, represented to the general public that RET was, "[e]asy to mix and use".

67.  At all times relevant, Defendant, TLD, designed the packaging for and/or actually packaged the RET that it sold to Defendants, Cabela's, and it also designed the instructions for use of the product and all printed materials accompanying the product.

68.  At all times relevant, Defendant, TLD, authored all instructions for use of the RET as well as all warnings printed on and in the packaging of the product.

69.  Neither the packaging of the RET nor the instructions contained within it set forth any warning that the chemicals, either alone or in combination, would or could detonate if exposed to flame or to heat and, in fact, the box clearly stated that the only way the

product could be detonated would be if it were shot at with "at least a 17 grain bullet at a minimum speed of 1000 feet per second and score a direct hit."  (see Exhibit "B", copy of back of RET box).

70.   At all times relevant, Defendants, and each of them, expressly and falsely warranted that RET was a safe product and that the only way that it could be detonated would be if it were to be directly impacted by at least a 17 grain bullet traveling at a minimum speed of 1,000 feet per second.

71.   As of December 2012, the only prominent health warning regarding the use of the RET product that was printed on the RET box stated, "[i]f contact with eyes, wash for 15 minutes and seek medical help."  (Id.)

72.   Defendant, TLD, also prominently printed or had printed on the RET box, "**MUST BE 21 YEARS TO PURCHASE**."  (Id.)

73.   Nowhere on the RET box was there any warning, prominent or otherwise, that the RET could detonate in any manner other than as a result of being impacted by a high velocity bullet of sufficient weight.

74.   The only mention on the box of how the RET product would react to external conditions other than impact was contained in nearly illegible fine print on the back of the box which stated that the product is "spark sensitive", with no definition or even a hint as to what that term meant or was intended to mean.

75.   The statement that the RET product was "spark sensitive" was vague, ambiguous, obtuse and informationally inadequate to adequately convey any risk of harm associated with its use.

76.   As of December 2012, information printed on the RET box and on the instruction sheet to the effect that the product was "spark sensitive" was not properly placed or printed on the product since it was not printed in a prominent or eye catching font or color, since it was not printed in a prominent location on the box and since it was not prominently printed on the instruction sheet, on the "mixing bag" or on any of the other constituent components of the product.

77.   The printed statement on the RET box that it was "spark sensitive" was highly unlikely to catch the attention of the reasonably prudent person using the product at a firing range since it was buried in fine print and since it wasn't bolded or otherwise printed in an eye catching font, location or color.

78.   The printed statement that RET was "spark sensitive" totally failed in any way to actually inform the consumer that the product would detonate if exposed to flame or to high heat.

79.   As of December 2012, nowhere on the RET box or on the instruction sheet it contained was there any description of the magnitude of or specific hazard posed by exposing RET to flame or to high heat and nowhere on the box or on the instruction sheet was there any warning, prominent or otherwise, that the product could, and would, <u>detonate</u> if exposed to flame or to high heat nor was there even a hint as to what, if anything, would happen if such exposure occurred.

80.   No printed statement on the RET box or its contents warned the user of any potential risk of harm associated with exposing the product to flame or to high heat with the degree of intensity necessary to cause a reasonable person to note the warning and to avoid exposing the product to such external factors.

81. At all times relevant, Defendants, and each of them, knew or should have known and foresaw or should have foreseen that a reasonable consumer like the Plaintiff could seek to use RET as an accelerant yet no Defendant took reasonable steps to warn or adequately warn Plaintiff or any other consumer of any risk of harm associated with such a use.

82. Since Defendants, and each of them, knew or should have known and foresaw or should have foreseen that a user could seek to use the RET as an accelerant, each had a duty and obligation to provide the user with a warning that fully conveyed the nature and extent of danger posed.

83. The RET product will detonate if exposed to flame or high heat and on and prior to December 22, 2012 Defendants, and each of them, had knowledge of this fact.

84. At all times relevant, there was a high probability of harm if a consumer were to expose the RET chemical mixture to flame or to high heat yet no Defendant provided any warning of this risk.

85. Defendants, Cabela's, provided no warning regarding the use of the RET product at all.

86. During December of 2012 and January of 2013, Defendants, Cabela's, consistently failed, refused and neglected to enforce Defendant's, TLD's, stated minimum age requirement of 21 for the purchase of RET.

87. During January of 2013, Plaintiff's grandfather visited the Cabela's store in Post Falls, Idaho in order to determine whether Defendants, Cabela's, would sell Defendant's, TLD's, exploding target products to even younger people despite said Defendant's stated minimum age requirement, and Defendants, Cabela's, did, selling the products to a sixteen (16) year old boy on two occasions and to a thirteen (13) year old girl.

88. Long prior to December 22, 2012, it was understood by those knowledgeable in the field of explosives that the chemical mixture and components in the RET product would detonate if exposed to flame or to a high heat source and Defendants, and each of them, had knowledge of that fact.

89. The RET is a <u>very</u> dangerous product yet none of the Defendants took adequate steps to warn or protect the general public from dangers inherent in uses which were not only foreseeable but which were actually foreseen by all of the Defendants.

90. Given Defendants' failure to have printed and provided a warning, adequate warning, adequate instructions and other failures during December 2012, the RET was an unreasonably dangerous product sold in a defective condition.

91. At all times relevant, Defendants, Cabela's, had a full opportunity to, and did, inspect and test the RET in a manner which should, in the exercise of reasonable care, have revealed defects in the product that proximately caused severe and permanent injury to Plaintiff.

92. At all times relevant, Defendants, and each of them, had knowledge or reason to know of the defects in the RET product that proximately caused severe and permanent injury to Plaintiff.

93. The jurisdictional amount established for filing this action is satisfied and Plaintiff has satisfied all necessary conditions precedent to its commencement.

### <u>COUNT I: NEGLIGENCE</u>
### <u>(Plaintiff, Dylan Dodd v. Defendant, TLD Industries, LLC)</u>

94. Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through ninety-three (93) above as if fully set forth herein.

95. At all times relevant, Defendant, TLD, designed the RET packaging and instructions and held itself out to be the manufacturer of the RET product.

96.   At all times relevant, Defendant, TLD, manufactured the RET product including all constituent components or contracted with others to do so consistent with plans and specifications that said Defendant had designed.

97.   The plans and specifications for the RET product were defective and a substantial cause of the product's defects.

98.   At all times relevant, Defendant, TLD, had a duty to exercise reasonable care in performing and/or supervising and directing others to perform the design, manufacturing, testing, packaging, marketing, distribution and sale into the stream of commerce of the RET product, including a duty to warn the general public and, specifically, the Plaintiff, of risks of harm associated with use of the product and to insure that the RET did not pose a significant risk of harm to users of the product, to the general public and, specifically, to the Plaintiff, a duty which said Defendant breached.

99.   On and prior to December 2012, Defendant, TLD, failed to provide adequate instructions and warnings regarding the use of the RET product insofar as, <u>inter alia</u>, the instructions and all printed materials accompanying the product:

    (i)    did not describe the magnitude or specific hazard posed by exposing the product to flame or high heat since they did not warn that the product would detonate;

    (ii)   in no way described what, if anything, would occur if the product were exposed to flame or high heat;

    (iii)  totally failed to inform the user that the product would detonate if exposed to flame or to high heat;

    (iv)  provided vague, ambiguous, unintelligible and substantially illegible information regarding the use of the product that was too small and informationally inadequate to adequately inform or warn the user since it was printed in an improper location, font size and color;

    (v)   were misleading since the product packaging affirmatively represented that the only way the product could be detonated would be if it were impacted with a

fast moving bullet of significant weight, a representation which was nowhere negated or clarified by any other product information that was provided;

(vi) failed to provide any warning regarding the potential for physical injury by product use or exposure, other than eye injury, in such a manner that would catch the attention of the reasonably prudent person or that would be in any way eye-catching to the foreseeable user at the firing range or other foreseeable location;

(vii) totally failed to alert the user to any potential mechanism of detonation other than by impact with a bullet of at least seventeen (17) grains travelling at a speed of at least 1,000 feet per second;

(viii) failed to provide users with a warning with the degree of intensity necessary to cause a reasonable person to note the warning and to avoid exposing the product to flame or high heat; and

(ix) failed to provide users with information as to how to safely dispose of excess explosive material.

100. Defendant, TLD, failed to exercise reasonable care in performing and/or supervising and directing others to perform the design, manufacture, testing, packaging, marketing, distribution and sale into the stream of commerce of the RET product.

101. Defendant, TLD, knew or should have known that the RET was a defective and unsafe product as marketed, distributed and sold by said Defendant due to, inter alia, said Defendant's failure to have warned and to have adequately warned the general public regarding serious and foreseeable risks of harm associated with its use.

102. Despite the fact that Defendant, TLD, knew or should have known of the serious and foreseeable risks of harm associated with the use of the RET product given the absence and/or inadequacy of necessary warnings, and other product defects, it marketed, distributed and sold the RET to the general public as a safe product.

103. At all times relevant, it was foreseeable to Defendant, TLD, that the RET, given the absence and/or inadequacy of warnings and instructions, would harm members of the

general public, including Plaintiff, in the manner in which Plaintiff was injured.

104. At all times relevant, Defendant, TLD, had a duty to the general public and to Plaintiff, specifically, to market and sell RET in such a manner so as not to make material misrepresentations regarding the nature, use and safety of the product and, moreover, given the dangerous nature of the product, it had a duty to provide accurate, prominent warnings and information as to the mechanism by which the product could be detonated and a safe method for disposal of excess explosive material, duties which said Defendant breached and which breaches proximately caused severe and permanent bodily and other injury to the Plaintiff.

105. At all times relevant, Defendant, TLD, had a duty to the general public and to Plaintiff, specifically, to provide adequate instructions regarding the use of the RET product, a duty which said Defendant breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff.

106. Defendant, TLD, foresaw the risks of harm to Plaintiff yet took no steps reasonably calculated to fully convey to or to adequately warn Plaintiff of the nature, extent and severity of the risks of harm or to adequately instruct him on the use of the RET product.

107. The RET packaging, constituent components and instructions were defective, unreasonably dangerous and wholly failed to apprise Plaintiff of the risks of harm associated with his use of this product.

108. At all times relevant, Defendant, TLD, had a duty to the Plaintiff and to all foreseeable users of the RET product to foresee the likely uses of the product and said Defendant had an affirmative obligation to provide adequate warnings and instructions given such foreseeable uses, a duty which said Defendant breached and which breach proximately

caused severe and permanent injuries to Plaintiff.

109. By Defendant's, TLD's, aforesaid acts and omissions, said Defendant breached its duty of care to the general public generally and to the Plaintiff specifically, a breach which proximately resulted in severe bodily and other injury to the Plaintiff.

110. At all times relevant, Defendant, TLD, had a duty to the Plaintiff and to all foreseeable users of the RET product to warn and to adequately warn of dangers that were inherent in the foreseeable use and possession of it, a duty which said Defendant breached and which breach proximately caused severe and permanent injury to Plaintiff.

111. Said Defendant knew or should have known that the RET would detonate if exposed to flame or high heat and that excess explosive material would remain after all "snap caps" had been used yet did nothing to warn the general public or to provide it with any instructions as to how to safely dispose of such excess explosive material

112. The aforesaid acts and omissions committed and omitted by Defendant, TLD, constitute intentional, reckless and grossly negligent disregard for the health and well-being of the general public and for Plaintiff in particular since said Defendant had knowledge of the grave risks of harm associated with foreseeable uses of its product yet did nothing to warn, to adequately warn and to instruct the Plaintiff and such failures were extreme deviations from reasonable standards of conduct in complete disregard for the entirely foreseeable, likely and actually foreseen consequences.

113. The aforesaid acts and omissions committed and omitted by Defendant, TLD, constituted gross and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

114.   As a direct, immediate and proximate consequence of Defendant's, TLD's, aforesaid acts and omissions, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

115.   As a direct, immediate and proximate consequence of the aforesaid acts and omissions on the part of Defendant, TLD, Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

116.   As a further direct and proximate result of the acts and omissions of the Defendant, TLD, Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, TLD Industries, LLC, for:

    a.   General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b.   Past and future medical expenses;

    c.   Past and future mental anguish and emotional distress;

    d.   Plaintiff's out-of-pocket expenses;

    e.   Interest;

    f.   Costs;

g.  Expenses;

h.  Attorneys' fees as allowed by law; and

i.  For such other and further relief as this Honorable Court deems meet and just.

### COUNT II: NEGLIGENCE
### (Plaintiff, Dylan Dodd v. Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc.)

117.  Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred sixteen (116) above as if fully set forth herein.

118.  As the seller of RET, at all times relevant, Defendants, Cabela's, are imputed to have known that the product would detonate if exposed to flame or high heat.

119.  At all times relevant, Defendants, Cabela's, had a duty to exercise reasonable care in the marketing, distribution and sale into the stream of commerce of the RET product, including a duty to insure that it did not pose a significant risk of harm to users of the product, to the general public and, specifically, to the Plaintiff.

120.  On and prior to December 2012, Defendants, Cabela's, had reasonable opportunity to inspect the RET product and actually inspected it, yet failed to conduct a reasonable inspection of the product since such an inspection would have revealed the inadequacy of warnings and instructions provided by Defendant, TLD, and other defects in the product.

121.  On and prior to December 22, 2012, Defendants, Cabela's, represented to the general public, and to Plaintiff specifically, that they tested all of the products they sold and, consequently, said Defendants knew or should have known that the RET would detonate if exposed to flame or high heat and that excess explosive material would remain after all "snap caps" had been used yet did nothing to warn the general public or to provide it with any instructions as to how to safely dispose of such excess explosive

material.

122.   At no time relevant did Defendants, Cabela's, take any steps reasonably calculated to warn Amanda, Karalynn, the Plaintiff or other foreseeable users of RET of any risk associated with exposing RET to flame or to high heat or to provide them with adequate instructions.

123.   Defendants, Cabela's, failed to exercise reasonable care in the marketing, distribution and sale into the stream of commerce of the RET product.

124.   At all times relevant, Defendants, Cabela's, knew or should have known that the RET was a defective and unsafe product as marketed, distributed and sold by said Defendant.

125.   Despite the fact that Defendants, Cabela's, knew or should have known of the serious and foreseeable risks of harm associated with the use of the RET given the absence and/or inadequacy of necessary warnings and instructions, they marketed, distributed and sold the RET to the general public as a safe product.

126.   At all times relevant, it was foreseeable to Defendants, Cabela's, that the RET, as sold by said Defendants, would harm members of the general public, including Plaintiff, in the manner in which Plaintiff was injured.

127.   By Defendants', Cabela's, acts and omissions committed and omitted in the marketing, inspection, testing, distribution and sale of the RET, said Defendants breached their duty of care to the general public generally and to the Plaintiff specifically, a breach which proximately resulted in severe bodily and other injury to the Plaintiff.

128.   At all times relevant, Defendants, Cabela's, had a duty to the general public and to Plaintiff, specifically, to market and sell RET in such a manner so as not to make material misrepresentations regarding the nature, use and safety of the product and,

moreover, given the dangerous nature of the product, they had a duty to provide accurate, prominent warnings and information as to the mechanism by which the product could be detonated, duties which said Defendants breached and which breaches proximately caused severe and permanent bodily and other injury to the Plaintiff.

129.  At all times relevant, Defendants, Cabela's, had a duty to the general public and to Plaintiff, specifically, to provide adequate instructions regarding the use of the RET product, a duty which said Defendants breached and which breach proximately caused severe and permanent bodily and other injury to the Plaintiff.

130.  The RET packaging and instructions wholly failed to apprise Plaintiff of the risks of harm associated with his use of this product.

131.  At all times relevant, Defendants, Cabela's, had a duty to the Plaintiff and to all foreseeable users of the product to foresee the likely uses of the product and Defendants had an affirmative obligation to provide adequate warnings and instructions given such foreseeable uses, a duty which said Defendants breached and which breach proximately caused severe and permanent injuries to Plaintiff.

132.  The aforesaid acts and omissions committed and omitted by Defendants, Cabela's, constitute intentional, reckless and grossly negligent disregard for the health and well-being of the general public and for Plaintiff in particular and such failures were extreme deviations from reasonable standards of conduct in complete disregard for the entirely foreseeable, likely and actually foreseen consequences.

133.  The aforesaid acts and omissions committed and omitted by Defendants, Cabela's, constituted gross and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

134.    As a direct, immediate and proximate consequence of Defendants', Cabela's, aforesaid acts and omissions, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

135.    As a direct, immediate and proximate consequence of the aforesaid acts and omissions on the part of Defendants, Cabela's, said Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

136.    As a further direct and proximate result of the acts and omissions of the Defendants, Cabela's, Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, Cabela's, Inc. and Cabela's Wholesale, Inc., jointly and severally, for:

    a.   General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b.   Past and future medical expenses;

    c.   Past and future mental anguish and emotional distress;

    d.   Plaintiff's out-of-pocket expenses;

    e.   Interest;

    f.   Costs;

g.   Expenses;

h.   Attorneys' fees as allowed by law; and

i.   For such other and further relief as this Honorable Court deems meet and just.

### COUNT III: NEGLIGENCE (RESPONDEAT SUPERIOR)
### (Plaintiff, Dylan Dodd v. Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc.)

137.   Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred thirty-six (136) above as if fully set forth herein.

138.   At all times relevant hereto, Stewart was acting within the course and scope of his employment by Defendants, Cabela's, and the acts complained of herein were so closely connected with what he was employed to do by Defendants, Cabela's, and so fairly and reasonably incidental to it that they are properly considered methods of carrying out his employment by Defendants, Cabela's.

139.   In inducing Amanda Lewis to purchase the RET product, which set in motion the series of events that proximately caused severe and permanent injury to Plaintiff, Stewart was engaged in Defendants', Cabela's, business, he reasonably appeared to be so engaged, he was on Defendants', Cabela's, property and within their retail store, he was acting under the direction, supervision and control of Defendants, Cabela's, and in furtherance of their interests, he was acting within the course and scope of his employment by Defendants, Cabela's, he was then paid by Defendants, Cabela's, and he represented himself to the general public and to Amanda Lewis as being an employee of Defendants, Cabela's.

140.   At all times relevant, Stewart had a duty to act as a reasonably prudent person in offering to sell and in selling products to the general public, and to Amanda Lewis

specifically, a duty which he breached when he offered to sell and sold the RET product to Amanda Lewis after having first affirmatively induced her to purchase it insofar as Defendant, TLD, expressly cautioned Stewart and Defendants, Cabela's, that the product was not to be sold to anyone under the age of twenty-one (21) and since Amanda Lewis was only eighteen (18) years old on December 22, 2012.

141.    In having sold the RET product to Amanda Lewis, Stewart breached a duty of care to her and to all foreseeable users of the product, including the Plaintiff, a breach which proximately resulted in the Plaintiff's sustaining severe and permanent injuries.

142.    But for Stewart's reckless and grossly negligent acts and omissions in having sold the RET product to Amanda Lewis in derogation of Defendant's, TLD's, specific age requirement, Plaintiff, Dylan Dodd, would not have suffered the severe and permanent injuries that he did on December 28, 2012 and he would still have his right hand today.

143.    At all times relevant on and prior to December 22, 2012, it was foreseeable to Stewart that the sale of such a dangerous product as the RET product could result in extremely serious bodily injury to Amanda Lewis or to other individuals who also did not meet the Defendant's, TLD's, stated age requirement since such underage individuals were unlikely to recognize or appreciate the extremely dangerous nature of the product or to exercise that degree of care and caution that the use of such a product required.

144.    At all times relevant, Stewart had a duty to use that level of ordinary care while acting on behalf of Defendants, Cabela's, so as to not injure others, to avoid injury to others by any agency set in operation by him and to do his work within the scope of his employment and to avoid such injuries, duties which he breached and which breaches proximately caused severe and permanent injury to the Plaintiff.

145.   The aforesaid acts and omissions committed and omitted by Stewart constitute reckless and grossly negligent disregard for the health and well-being of the general public and for Plaintiff in particular and such acts and omissions were extreme deviations from reasonable standards of conduct in complete disregard for the entirely foreseeable and likely consequences.

146.   The aforesaid acts and omissions committed and omitted by Stewart, which all occurred while acting within the course and scope of his employment by Defendants, Cabela's, and in furtherance of said employers' interests, constituted gross and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

147.   As a direct, immediate and proximate consequence of Stewart's aforesaid acts and omissions, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

148.   As a direct, immediate and proximate consequence of the aforesaid acts and omissions on the part of Stewart, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

149. While acting with the course and scope of his employment by Defendants, Cabela's, in furtherance of employment related objectives and while on Defendants', Cabela's, property and within their retail store, Stewart engaged in the aforementioned acts and omissions which proximately caused severe and permanent injuries to the Plaintiff for which his employer Defendants, Cabela's, is vicariously liable.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, Cabela's, Inc. and Cabela's Wholesale, Inc., jointly and severally, for:

    a.  General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b.  Past and future medical expenses;

    c.  Past and future mental anguish and emotional distress;

    d.  Plaintiff's out-of-pocket expenses;

    e.  Interest;

    f.  Costs;

    g.  Expenses;

    h.  Attorneys' fees as allowed by law; and

    i.  For such other and further relief as this Honorable Court deems meet and just.

## COUNT IV: NEGLIGENCE
### (Plaintiff, Dylan Dodd v. Defendants, Cabela's, Inc. and Cabela's Wholesale, Inc.)

150. Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred forty-nine (149) above as if fully set forth herein.

151. At all times relevant, Defendants, Cabela's, employed Stewart at their retail store in Post Falls, Idaho.

152. At all times relevant, Defendants, Cabela's, had the authority and duty to and actually did supervise, direct and control Stewart in his capacity as their employee.

153. On and prior to December 22, 2012, Defendants, Cabela's, knew or should have known that Stewart was selling RET to individuals under the age of 21 and otherwise with reckless and grossly negligent disregard for the health and well-being of the general public.

154. At all times relevant, Defendants, Cabela's, failed and neglected to adequately train, supervise, direct and control Stewart in his conduct as their employee and, specifically, Defendants, Cabela's, failed to counsel, direct, train and supervise Stewart in his sale of the RET product thereby proximately resulting in its sale to an underage consumer which sale proximately set in motion a foreseeable chain of events that proximately caused severe and permanent injuries to the Plaintiff, Dylan Dodd.

155. Given the extremely dangerous nature of the RET product, Defendants', Cabela's, failure and neglect to have adequately trained, supervised, directed and counseled Stewart to sell it in conformity with Defendant's, TLD's, specific instructions not to sell it to anyone under the age of twenty-one (21) constituted reckless disregard for and deliberate indifference to a highly probable risk of serious harm to the general public and, specifically, to the Plaintiff, Dylan Dodd.

156. Defendants', Cabela's, failure to have adequately trained, supervised, directed and controlled Stewart constituted reckless and grossly negligent disregard for the health and well-being of the general public and, specifically, the health and well-being of the Plaintiff, Dylan Dodd.

157. Defendants', Cabela's, grossly negligent and reckless acts and omissions in the training, supervision, direction and control of Stewart proximately caused severe and permanent injuries to Plaintiff, Dylan Dodd.

158. But for Defendants', Cabela's, grossly negligent and reckless failure to have adequately trained, supervised, directed and controlled Stewart, the RET product would never have been sold to Amanda Lewis on December 22, 2012 and Plaintiff, Dylan Dodd, would not have suffered the severe and permanent injuries that he did on and after December 28, 2012.

159. In having recklessly failed to have adequately trained, supervised, directed and controlled Stewart, Defendants, Cabela's, intentionally disregarded a highly foreseeable risk of serious harm to members of the general public and, specifically, to Plaintiff, Dylan Dodd.

160. At all times relevant it was foreseeable to Defendants, Cabela's, that their failure to have adequately trained, supervised, directed and controlled Stewart and their other employees in the sale of the RET product would set in motion a chain of events that would result in grave bodily injury to members of the general public such as Plaintiff, Dylan Dodd.

161. Defendants', Cabela's, conduct in selling the RET product to children, and to otherwise underage consumers, in direct contravention of Defendant's, TLD's, stated age requirement, constituted grossly negligent and reckless disregard for the well-being of the general public and Plaintiff, specifically.

162. Defendants', Cabela's, failure and neglect to have adequately trained, supervised, directed, controlled and instructed its employees at its Post Falls, Idaho store that the RET product was not to be sold to anyone under the age of twenty-one (21), as explicitly mandated by Defendant, TLD, constituted willful, reckless, grossly negligent and

negligent misconduct that proximately caused severe and permanent injuries to Plaintiff, Dylan Dodd.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, Cabela's, Inc. and Cabela's Wholesale, Inc., jointly and severally, for:

    a. General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b. Past and future medical expenses;

    c. Past and future mental anguish and emotional distress;

    d. Plaintiff's out-of-pocket expenses;

    e. Interest;

    f. Costs;

    g. Expenses;

    h. Attorneys' fees as allowed by law; and

    i. For such other and further relief as this Honorable Court deems meet and just.

## COUNT V: Negligence
## (Plaintiff, Dylan Dodd v. Defendant, TLD Industries, LLC)

163. Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred sixty-two (162) above as if fully set forth herein.

164. Given the extremely dangerous nature of the product and in light of the fact that teenage consumers were not likely to appreciate the gravity of such dangers and risks associated with its use, at all times relevant Defendant, TLD, owed a duty to the general public and to Plaintiff specifically to ensure that retailers of the RET product such as Defendants, Cabela's, were adequately informed, trained and instructed not to sell such a dangerous product to consumers who were younger than Defendant's, TLD's, stated

age requirement of twenty-one (21).

165.   Defendant, TLD, failed to adequately inform, train and instruct agents, servants and employees of Defendants', Cabela's, regarding, inter alia, the importance of strictly enforcing the consumer age requirement thereby breaching its duty to the general public and to Plaintiff specifically.

166.   The aforesaid acts and omissions committed and omitted by Defendant, TLD, constitute reckless and grossly negligent disregard for the health and well-being of the general public and for Plaintiff in particular.

167.   The aforesaid acts and omissions committed and omitted by Defendant, TLD, constituted reckless and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

168.   As a direct, immediate and proximate consequence of Defendant's, TLD's, aforesaid acts and omissions, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

169.   As a direct, immediate and proximate consequence of the aforesaid acts and omissions on the part of Defendant, TLD, said Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the

future substantial medical and other direct and consequential damages and expenses, all to his great damage.

170. As a further direct and proximate result of the acts and omissions of the Defendant, TLD, Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, TLD Industries, LLC, for:

    a. General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b. Past and future medical expenses;

    c. Past and future mental anguish and emotional distress;

    d. Plaintiff's out-of-pocket expenses;

    e. Interest;

    f. Costs;

    g. Expenses;

    h. Attorneys' fees as allowed by law; and

    i. For such other and further relief as this Honorable Court deems meet and just.

**COUNT VI: Negligence – Violation of the Federal Hazardous Substance Act,**
**15 U.S.C. §1261 et. seq.**
**(Plaintiff, Dylan Dodd v. Defendant, TLD Industries, LLC)**

171. Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred seventy (170) above as if fully set forth herein.

172. Defendant, TLD, placed RET into interstate commerce for the use of the general public.

173. The RET product is capable of causing (and did cause) substantial personal injury as a result of reasonably foreseeable handling or use of the product.

174.   Defendant, TLD, knew or should have known of the risk of substantial personal injury resulting from the reasonably foreseeable handling or use of its RET product.

175.   Defendant, TLD, knew or should have known that the RET product would be stored or used in or around a dwelling or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed.

176.   Defendant, TLD's, RET product is a hazardous substance within the meaning of the Federal Hazardous Substance Act ("FHSA"), 15 U.S.C. §1261 et. seq., and is thus subject to labeling requirements under the FHSA.

177.   Defendant, TLD, failed to comply with the FHSA in its labeling of the RET by its acts and omissions which include, but are not limited to, the following:

> i.     failing to state conspicuously the signal word "DANGER";
>
> ii.    Failing to state conspicuously the signal word "WARNING" or "CAUTION";
>
> iii.   Failing to state conspicuously the principal hazard or hazards;
>
> iv.    Failing to conspicuously state the precautionary measures describing the action to be followed or avoided; and
>
> v.     Failing to utilize the required text size as mandated by the FHSA.

178.   The labeling requirements of the FHSA are intended to prevent the type of harm suffered by Plaintiff, Dylan Dodd, and caused by Defendant's, TLD's, acts or omissions.

179.   The Plaintiff, Dylan Dodd, is a member of the class of persons the FHSA was designed to protect.

180.   As a direct, immediate and proximate consequence of Defendant's, TLD's, failure to have complied with the FHSA, Plaintiff, Dylan Dodd, sustained permanent and

disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

181.    As a direct, immediate and proximate consequence of Defendant's, TLD's, failure to have complied with the FHSA, Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

182.    As a further direct and proximate result of the Defendant's, TLD's, failure to have complied with the FHSA, Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, TLD Industries, LLC, for:

    a.   General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

    b.   Past and future medical expenses;

    c.   Past and future mental anguish and emotional distress;

    d.   Plaintiff's out-of-pocket expenses;

    e.   Interest;

    f.   Costs;

    g.   Expenses;

h.   Attorneys' fees as allowed by law; and

i.   For such other and further relief as this Honorable Court deems meet and just.

**COUNT VII: Negligence Per Se – Violation of the Federal Hazardous Substance Act,**
**15 U.S.C. §1261 et. seq.**
**(Plaintiff, Dylan Dodd v. Defendant, TLD Industries, LLC)**

183.   Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred eighty-two (182) above as if fully set forth herein.

184.   Defendant, TLD, placed RET into interstate commerce for the use of the general public.

185.   The RET product is capable of causing (and did cause) substantial personal injury as a result of reasonably foreseeable handling or use of the product.

186.   Defendant, TLD, knew or should have known of the risk of substantial personal injury resulting from the reasonably foreseeable handling or use of its RET product.

187.   Defendant, TLD, knew or should have known that the RET product would be stored or used in or around a dwelling or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed.

188.   Defendant, TLD's, RET is a hazardous substance within the meaning of the FHSA, 15 U.S.C. §1261 et. seq., and is thus subject to the labeling requirements under the FHSA.

189.   Defendant, TLD, failed to comply with the FHSA in its labeling of the RET by its acts and omissions which include, but are not limited to, the following:

i.   failing to state conspicuously the signal word "DANGER";

ii.   Failing to state conspicuously the signal word "WARNING" or "CAUTION";

iii.   Failing to state conspicuously the principal hazard or hazards;

iv.    Failing to conspicuously state the precautionary measures describing the action to be followed or avoided; and

v.    Failing to utilize the required text size as mandated by the FHSA.

190.    The FHSA clearly defines the standard of conduct with which Defendant, TLD, was required to comply in labeling its RET product.

191.    The labeling requirements of the FHSA are intended to prevent the type of harm suffered by Plaintiff, Dylan Dodd, and caused by Defendant's, TLD's, acts or omissions.

192.    The Plaintiff, Dylan Dodd, is a member of the class of persons the FHSA was designed to protect.

193.    Defendant's, TLD's, failure to comply with the FHSA constitutes negligence per se.

194.    As a direct, immediate and proximate consequence of Defendant's, TLD's, negligence per se, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

195.    As a direct, immediate and proximate consequence of Defendant's, TLD's, negligence per se, Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

196.   As a further direct and proximate result of the Defendant's, TLD's, negligence per se, Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendant, TLD Industries, LLC, for:

a.   General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

b.   Past and future medical expenses;

c.   Past and future mental anguish and emotional distress;

d.   Plaintiff's out-of-pocket expenses;

e.   Interest;

f.   Costs;

g.   Expenses;

h.   Attorneys' fees as allowed by law; and

i.   For such other and further relief as this Honorable Court deems meet and just.

### COUNT VIII: Strict Product Liability (I.C. §6-1402(1), et. seq.) (Failure to Warn) (Plaintiff, Dylan Dodd v. Defendants, TLD Industries, LLC, Cabela's, Inc. and Cabela's Wholesale, Inc.)

197.   Comes now the Plaintiff and realleges and reaffirms all allegations contained in paragraphs one (1) through one hundred ninety-six (196) above as if fully set forth herein.

198.   The RET product reached Plaintiff without substantial change in the condition in which Defendant, TLD, had sold it to Defendants, Cabela's, and, in turn, to Amanda Lewis.

199.   Given Defendants', and each of their, failure to have provided a warning and adequate warning, and instructions, regarding the use and safe disposal of RET during December of 2012, the RET was an unreasonably dangerous product sold in a defective condition.

Complaint and Jury Claim                                    37

200.    At all times relevant Defendants, Cabela's, had reasonable opportunity to inspect, and actually inspected, the RET prior to its sale to the general public and, specifically, prior to its sale to Amanda Lewis on December 22, 2012, yet they failed to conduct a reasonable inspection since such an inspection of the product would have revealed the absence or inadequacy of warnings and instructions provided by Defendant, TLD, which absence was a proximate cause of harm to Plaintiff.

201.    On and prior to December 22, 2012, Defendants, Cabela's, represented to the general public that they tested all of the products they sold and, consequently, said Defendants knew or should have known that RET would detonate if exposed to flame or high heat and that excess explosive would remain after all of the "snap caps" had been utilized yet did nothing to provide the general public with such information or to advise on safe disposal methods for excess explosive.

202.    In light of Defendants' failure to have warned and adequately warned about risks of harm associated with uses of RET that they foresaw or should have foreseen, the danger associated with exposure of the product to flame or high heat was in no way obvious to Plaintiff, especially since the product packaging and instructions explicitly advise that the only way that the product can be detonated is if it is hit with a high velocity bullet of at least 17 grains.

203.    Defendants, and each of them, knew or should have known that the absence and inadequacy of their warning regarding the foreseeable use of RET was likely to cause harm to members of the general public and, specifically, to Plaintiff as a foreseeable user of the product.

204.   That RET would detonate if exposed to flame or high heat was a latent danger that was neither reasonably discoverable nor one contemplated by consumers such as Plaintiff.

205.   Defendants', and each of their, failure to have warned, to have adequately warned and to have instructed Plaintiff of risks of harm associated with the use of RET which Defendants either foresaw or should have foreseen was unreasonable and proximately caused grave bodily and other injuries to Plaintiff.

206.   Defendants', and each of their, failure to have warned, to have adequately warned and to have instructed Plaintiff regarding the latent and grave risks of harm associated with foreseeable use of RET and to have misled Plaintiff as to the means by which the product could be detonated rendered the product unreasonably dangerous and defective and proximately caused the Plaintiff to sustain grave bodily and other injuries.

207.   At all times relevant, RET was defective since it was dangerous to an extent beyond that which would be contemplated by an ordinary consumer generally and by the Plaintiff specifically.

208.   At all times relevant Defendants, and each of them, had reason to anticipate that danger could result to Plaintiff from a particular use of RET yet failed to provide the Plaintiff with adequate warnings of such danger and to have adequately instructed him on the use of the product.

209.   At all times relevant, Plaintiff's use of the product in the manner in which he used it on December 28, 2012 was known and reasonably foreseeable to Defendants, and to each of them.

210.   The information contained on the RET box and instructions that RET was "spark sensitive" failed to warn and adequately warn Plaintiff of hazards associated with the

use of the product since it, <u>inter</u> <u>alia</u>:

(i) did not describe the magnitude or specific hazard posed by exposing the product to flame or high heat since <u>it did not warn that the product will detonate</u>;

(ii) <u>was buried in fine print</u> well below where a reasonable consumer would believe the important warnings were stated; <u>e.g.</u>, at the top of the back of the box where the consumer is warned about eye injury;

(iii) <u>was too small</u>;

(iv) <u>was informationally inadequate</u>;

(v) <u>was misleading</u> since a reasonable consumer could easily conclude that the only way the product could be detonated would be if it were hit with a fast moving bullet, as stated in bold at the top of the back of the box; no information provided with the product alerted the user to any other way that the product can be detonated;

(vi) <u>was vague and ambiguous</u>;

(vii) <u>was not properly placed on the pro</u>duct.  It should have been printed in bold on the front of the box or, at minimum, prominently at the top of the back of the box, where the <u>only</u> physical injury warning is located and it should <u>also</u> have been printed, in bold, on the mixing bag supplied with the product since it is foreseeable that the box could be discarded after the product is mixed or otherwise separated from the mixing bag;

(viii) <u>was highly unlikely to catch the attention of the reasonably prudent person</u> using the product at a firing range since it was buried in fine print, not bolded, not set out in a large font or eye-catching color or location;

(ix) totally <u>failed in any way to actually inform the user</u> that the product will <u>detonate</u> if exposed to flame or high heat; and

(x) <u>failed to warn the user with the degree of intensity necessary</u> to cause a reasonable person to note the warning and to avoid exposing the product to flame or high heat.

211. Defendants, and each of them, foresaw or should have foreseen the use that caused grave physical and other harms to Plaintiff on December 28, 2012, and the risks associated with it, and therefore had a duty to provide the Plaintiff with an adequate, prominent, eye-catching warning that fully conveyed the nature and extent of danger posed, a duty which each Defendant breached.

212.   At all times relevant, Defendants, and each of them, had knowledge that RET would detonate if exposed to high heat or flame yet did nothing to warn the Plaintiff of this fact.

213.   The aforesaid acts and omissions committed and omitted by Defendants, and by each of them, resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff and constituted intentional, reckless and grossly negligent disregard for the health and well-being of the general public and for Plaintiff in particular and such failures were extreme deviations from reasonable standards of conduct in complete disregard for the entirely foreseeable, likely and actually foreseen consequences.

214.   The aforesaid acts and omissions committed and omitted by Defendants, and by each of them, resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff and constituted reckless and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

215.   As a direct, immediate and proximate consequence of Defendants' acts and omissions which resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff, said Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

216.   As a direct, immediate and proximate consequence of the aforesaid acts and omissions on the part of Defendants, which resulted in the sale of the RET product which was in a

defective condition unreasonably dangerous to Plaintiff, said Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

217.   As a further direct and proximate result of the aforesaid acts and omissions of the Defendants which resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff, said Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendants, TLD Industries, LLC, Cabela's, Inc. and Cabela's Wholesale, Inc., jointly and severally, for:

a.   General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

b.   Past and future medical expenses;

c.   Past and future mental anguish and emotional distress;

d.   Plaintiff's out-of-pocket expenses;

e.   Interest;

f.   Costs;

g.   Expenses;

h.   Attorneys' fees as allowed by law; and

i.   For such other and further relief as this Honorable Court deems meet and just.

**COUNT IX: Strict Product Liability (I.C. §6-1402(1), et. seq.) (Design Defect)**
**(Plaintiff, Dylan Dodd v. Defendants, TLD Industries, LLC, Cabela's, Inc. and Cabela's**
**Wholesale, Inc.)**

218.   Comes now the Plaintiff and realleges and reaffirms all allegations contained in
paragraphs one (1) through two hundred seventeen (217) above as if fully set forth
herein.

219.   At all times relevant, once the constituent chemical components of RET were mixed it
became an "explosive" within the context of 27 C.F.R. 555.11, et. seq., and was subject
to all state and federal regulations governing explosives, including licensure and
transportation requirements imposed by such laws.

220.   Target "snap caps" provided with the RET product sold to Amanda Lewis on December
22, 2012 were inadequate in number and volume to hold all of the chemical mixture,
thereby, by necessity, resulting in excess explosive that could not have been transported
away from the site at which the product had been mixed since neither Plaintiff nor any
of his friends were appropriately licensed to do so.

221.   The fact that excess explosive existed after all of the "snap caps" had been utilized on
December 28, 2012 and the fact that no Defendant provided instructions as to how to
safely dispose of such excess explosive constituted defects in the design of the RET
product for which Defendants are responsible and but for which defects Plaintiff would
not have suffered severe and permanent physical and other injuries.

222.   The aforesaid product design defects proximately caused Plaintiff to sustain severe and
permanent physical and other injuries.

223.   Given the aforesaid product design defects, the RET product was sold in a defective
condition unreasonably dangerous to Plaintiff.

224.   At all times relevant, Defendants, Cabela's, had knowledge or reason to know of these product design defects since they had reasonable opportunity to, and did, inspect the product and since a reasonable inspection would have revealed the existence of the defective condition at issue.

225.   Since at all relevant times Defendants knew or should have known that the "snap caps" supplied with the RET product were inadequate to hold all of the explosive mixture and since it was foreseeable that consumers such as Plaintiff would not possess requisite licensure to transport the explosive from a firing range, it was foreseeable to Defendants that consumers such as Plaintiff would seek to utilize the excess explosive for purposes other than target practice and that such consumers could thereby suffer grave physical and other injuries as a direct consequence.

226.   At all times relevant, the RET product was sold in a defective condition unreasonably dangerous to Plaintiff who, as the ultimate and foreseeable user, was proximately injured by it.

227.   At all times relevant, Defendants had reason to anticipate that danger could result to Plaintiff from the existence of excess explosive material yet did nothing to advise Plaintiff of how to safely dispose of such material.

228.   But for the aforesaid willful and reckless acts and omissions on Defendants', and each of their, part, Plaintiff would not have suffered the severe and permanent physical and other injuries he did on and after December 28, 2012.

229.   The aforesaid acts and omissions on the part of Defendants which resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff constituted intentional and reckless disregard for the health and well-being of

the general public and for Plaintiff in particular, and such failures were extreme deviations from reasonable standards of conduct in complete disregard for the entirely foreseeable consequences.

230. The aforesaid acts and omissions committed and omitted by Defendants which resulted in the sale of the RET product which was in a defective condition unreasonably dangerous to Plaintiff constituted reckless and deliberate indifference to a highly probable, grave risk of harm to the general public and to Plaintiff specifically.

231. As a direct, immediate and proximate consequence of Defendants' sale of RET, a defective product that was unreasonably dangerous to the Plaintiff, Plaintiff, Dylan Dodd, sustained permanent and disabling injuries, he has been precluded from participating in normal life activities to the extent he had been able to prior to his injuries and will continue to be precluded from doing so in the future.

232. As a direct, immediate and proximate consequence of Defendants' sale of RET, a defective product that was unreasonably dangerous to the Plaintiff, said Plaintiff, Dylan Dodd, has sustained severe and permanent injuries to his mind and body and has suffered and will continue to suffer in the future from physical pain and mental and emotional anguish and has been compelled to employ and will in the future be compelled to employ the services of doctors, medical personnel and facilities to care for and treat him and has incurred and will incur in the future substantial medical and other direct and consequential damages and expenses, all to his great damage.

233. As a further direct and proximate result of Defendants' sale of RET, a defective product that was unreasonably dangerous to Plaintiff, said Plaintiff, Dylan Dodd, has lost the enjoyment of an established course of life.

WHEREFORE, Plaintiff, Dylan Dodd, demands judgment against Defendants, TLD Industries, LLC, Cabela's, Inc. and Cabela's Wholesale, Inc., jointly and severally, for:

a.  General damages, including, but not limited to, damages for pain and suffering and loss of an established course of life, in an amount to be determined at trial;

b.  Past and future medical expenses;

c.  Past and future mental anguish and emotional distress;

d.  Plaintiff's out-of-pocket expenses;

e.  Interest;

f.  Costs;

g.  Expenses;

h.  Attorneys' fees as allowed by law; and

i.  For such other and further relief as this Honorable Court deems meet and just.

## JURY CLAIM

The Plaintiff, Dylan Dodd, demands a trial by jury on all issues so triable.

DATED this 10th day of June, 2014.

By:   /s/ Terance P. Perry
Terance P. Perry, Esq.
DATSOPOULOS, MacDONALD & LIND, P.C.


By:   /s/ Del M. Post
Del M. Post, Esq.
DATSOPOULOS, MacDONALD & LIND, P.C.